## PATTY vs. PEASE & SEYMOUR.

Where the owner of property subject to the lien of a mortgage conveyed a part of the premises to M., and afterwards received the purchase money, and subsequent to that conveyance sold the residue of the premises for the full value thereof to H., under an agreement that the purchase money should all be applied upon the mortgage, and that the premises thus sold to H. should be released from the lien of the mortgage, and the mortgagee released the same accordingly ; *Held*, that such release did not discharge the part of the premises first conveyed from the lien for the residue of the money due upon the mortgage.

The rule of charging different parcels of land, subject to a common incumbrance, in the inverse order of their alienation, is a mere rule of equity ; and as a release to a subsequent purchaser of one parcel of the land is not a technical discharge of the lands previously conveyed from the lien of the incumbrance, it is not an equitable release except in those cases where upon the principles of natural justice and equity it ought to thus operate against the releasor.

Where a mortgagee whose mortgage is a lien upon two parcels of land, subsequently conveyed by the mortgagor to different purchasers, releases the piece last conveyed from the lien of his mortgage, without any notice, either actual or constructive, that the other parcel had been previously sold by the mortgagor, he does not thereby discharge the parcel not released.

THIS was an appeal from a decree of the vice chancellor April 7. of the seventh circuit. And the facts so far as they are necessary to the understanding of the principles of law decided in the case, are stated in the following opinion of the vice chancellor, delivered by him at the time of making the decree appealed from :

Moseley, V. C. The bill in this cause was filed to foreclose a mortgage, under the following circumstances : On the 10th December, 1810, Erastus Pease executed the mortgage described in the bill to John Patty and Robert Patty, upon a village lot in the village of Auburn, to secure the payment of $755,75, according to the condition of a bond of even date therewith, and the interest. On the 14th day of March, 1827, Pease the mortgagor, sold a portion of the premises covered by the mortgage, to William Maxwell, who afterwards paid the whole consideration for the sale of this portion to Pease. On the 18th day of March, 1827, Pease sold the residue of the said premises to Palmer Holley, with whom an arrangement was made, in virtue of which Holley paid the whole of the consideration for this purchase to Patty ; and it was applied and endorsed upon the bond and mortgage. Patty at that time executed an instrument declaring that portion of the premises sold by Pease to Holley released and discharged from the lien created by the mortgage from Pease to him. On the 31st day of July, 1830, Maxwell sold and conveyed that portion of the lot which was deeded to him by Pease, to James S. Seymour, the defendant in this suit, who still owns and is in possession of the same. A balance is yet claimed to be due upon the bond and mortgage. Robert Patty died in 1822, and the bill is filed by John Patty as the survivor. Pease has became insolvent.

Upon these facts, the complainant insists that he has a right to enforce the lien, originally created by the mortgage, upon that portion of the premises now held by Seymour, though it was conveyed by the mortgagor first in the order of time, to Maxwell. The leading principle applicable to the rights between those parties undoubtedly is, that when lands incumbered by a mortgage or judgment against the owner are subdivided and conveyed to different persons at different periods of time, that portion which is conveyed last by the incumbrancer is to be first called upon to contribute for its full value towards satisfying the incumbrance ; and thus each portion is thus to bear its pro-

portion of the burden in the reverse order of the time of its alienation. This principle is not now to be questioned. (*Gouvenour* v. *Lynch*, 2 *Paige's Rep.* 300.) It has been frequently asserted in our own courts and is deemed a cherished principle of the English chancery. (5 *John. Ch. Rep.* 33. 9 *Cowen*, 403.) When Maxwell purchased of Pease the west half of the lot, on the 14th March, 1827, he had undoubtedly the right to rely upon the rule of law towards protection from incumbrance; and the only serious question in the case is, whether the transaction between Pease, Holley and Patty, on the 18th of March, only two days after, if it should be sanctioned, impeaches that rule.

It may be difficult to illustrate or define the rule in any language more explicit than that in which it is declared. But its meaning would have been understood, and no doubt was so between the parties in their application of it when they learned that Pease by his deed to Maxwell of the 14th December transferred the whole, or so much of the lien created by his mortgage, to the other portion of the lot as to require its whole value to be applied in payment of the mortgage debt. Admonished by this rule, Holley was bound to see that upon the receipt of a deed from Pease on the 16th of the same month, for the other portion of the lot, he gave the full value of it; and that all the purchase money was applied upon the bond from Pease to Patty. If this was done, Holley might well have supposed that good faith had been maintained towards Maxwell. And this is believed to be the object and extent of the rule. If we carry our views back to the period of the transaction, it will be sufficient to see what now should have been advised to be done by the parties. But it is contended by the counsel for the defendant Seymour, that nothing short of a judicial sale of the second half of the lot, and an application of its proceeds under the direction of a decree, could satisfy the rule. I cannot admit the force of the objection. Natural justice was all that was required; and it surely can only be necessary to resort to a court of com-

petent jurisdiction to enforce it when withheld. It strikes me, therefore, that the principle of preference to the first purchase is preserved when the full value of the second sale is applied to the benefit of the first purchaser. Hence it is resolved into a question of fact, whether on the 16th of March, 1827, eight hundred dollars was the full value of that part of the premises conveyed to Holley. The release of that portion of the premises from Patty to Holley, discharging the mortgage, is dated on the 21st of March, five days after the date of the deed from Pease to Holley, and the circumstance, it is contended, shows that the release had no connection with the deed. The facts are so closely connected however in principle, and nearly related in time, as to evince that they were all dependant and constituted but one transaction. And Palmer Holley testified that the release was agreed upon before he could raise the money by a new mortgage to pay the consideration ; and that it was considered all one transaction. Besides, it is not perceived to be of any importance if Pease was not a party to the release, he must have been a party to the agreement in the appropriation of the avails of the sale. The purpose to be effected was palpable. Pease was called upon for payment, and he testified that he sold to raise money to pay the Pattys. Holley was the purchaser, and principally interested in the application of the purchase money. It behooved him to see that the release was obtained. It seems to have been quite immaterial whether the release was obtained or not ; for when the avails of the sale of that part of the lot were applied on the mortgage, it had discharged its obligation to both parties. In respect to the value of the premises, I consider that the estimate must be founded upon their value at the time of alienation. Any other rule would lead to much confusion, and in its application might, from subsequent fortuitous circumstances, defeat the ends of justice. There can be found no rule which would follow the premises last sold into their present altered and vastly enhanced condition in value, which would not also make a demand upon the

premises possessed by Seymour. And in which case the rule of construction must be abandoned, and its substitute would render it quite uncertain upon which half of the lot the burden would fall. It is therefore not only necessary to estimate their value at the time of alienation; but in judging of the testimony upon that point, to have due regard to impressions which may natually be made upon the minds of witnesses from extraordinary uses of real estate in consequence of unforeseen improvements.

On recurring to the testimony and comparing the estimate made by the witnesses of the value of that portion of the lot sold by Pease to Holley, on the 16th March, 1837, I cannot resist the conclusion that it was not only a fair sale and at its full value, but that it also may be deemed to have been a beneficial one at that period for the interest of the first purchaser; who stood in the character of a surety for the mortgage debt, by reason of the application of the proceeds of the sale upon that debt without any expense to him in effecting it. It was in all probability as much as Maxwell himself could at that time have made out of it if he had then the control of it. The manner in which the negotiation for its purchase was commenced and consummated in the purchase by Holley of Pease does not appear to have been unfair. Maxwell if he had been consulted would not have possessed the right to require a sale upon credit at an enhanced price. The creditor himself holding the incumbrance required payment; and after a diligent canvass of the subject a sale was agreed upon at the price of eight hundred dollars, with the understanding that the proceeds should be applied upon the bond and mortgage. Both parties went to Patty and saw the application of the money.

If I have not taken an erroneous view of the weight of the testimony, the equities between the parties in this cause do not require that the sale from Pease to Holley should be disturbed. It appears to have been made in good faith between the parties to it, for a fair cash value. And, what is unusual, the purchase money was agreed to be paid upon

the bond and mortgage of Pease; so as to extinguish as far as might be the lien of the mortgage on the whole lot.

I find no motive springing from natural justice to induce such interference; but on the contrary, a strong argument derived from the necessity of frequent alienations of real estate in a highly commercial community, and that the embarrassments should be as few as justice to those having prior equities will permit.

I have therefore come to the conclusion that the balance which upon reference to a master shall be found due upon the bond of Erastus Pease to John Patty and Robert Patty, and mentioned in the pleadings, remains a charge upon that portion of the premises mentioned in the pleadings, and which were conveyed by Maxwell to Seymour, on the 14th of March, 1827; and that upon the non-payment of such balance and the costs of this suit, within thirty days after the same shall have been reported to this court and the report confirmed, the premises be sold under the direction of a master in this court.

From this decision of the vice chancellor, the defendant Seymour appealed to the chancellor.

*John Porter*, for the appellant. The complainant should not be permitted to collect his mortgage debt out of the premises sold to Maxwell, and now held by Seymour. Maxwell purchased and took his title and paid the purchase money, without reserving any part thereof to be applied on the mortgage, leaving the remainder of the mortgaged premises still held by Pease the mortgagor. (9 *Cowen*, 403. 5 *John. Ch. Rep.* 235, 259, 240. 19 *John. Rep.* 486, 493. 4 *John. Ch. Rep.* 132.) The complainant knew of the sale to Maxwell before he gave the release to Holley. The remainder of the mortgaged premises held by Pease, after the sale to Maxwell, was of sufficient value to have discharged the mortgage, and has ever since remained so; and if not, Maxwell had such an equitable interest in the matter that he should have had notice,

by suit or otherwise, before any steps could be taken that might cast the burden of the mortgage, or any part of it, upon the land he purchased. Otherwise the release would operate as a fraud upon Seymour. For when he bought of Maxwell, the premises released were of far greater value than the amount of the mortgage debt; and he not having any knowledge of the release, had good reason to believe that his lot could never be made liable for the mortgage debt or any part of it. Maxwell by his purchase stood in the place of a surety for the payment of the mortgage debt; and the Pattys could do no act to discharge the security they held for the debt, to the prejudice of the rights of Maxwell, without releasing by the same act their lien upon the land. (4 *John. Ch. Rep.* 130. 2 *Paige,* 497. 3 *Id.* 649, 650, 652.) The debt could not without notice to the prior purchaser make a private sale of the remainder of the mortgaged premises, and pay the purchase money to the mortgagee and obtain a release of the mortgage lien, without discharging the lien of the mortgage on the land sold to Maxwell.

*P. Bronson,* for the respondents. The proof shows that $800, the price paid by Holley for the lot sold to him, was the full cash value of the lot at the time of the sale, and all that it could have been sold for. The release of the Holley lot by the complainant long after the mortgage was due, and on the application of the whole consideration money on the mortgage, is no bar to a claim on the lot held by Seymour, for the balance. The present value of the Holley lot, or its value at any time since the sale, is not material, and under the circumstance of the lease the evidence thereof should be excluded. (2 *Paige,* 300. 1 *Id.* 228.) The defendant Seymour had constructive if not actual notice of the mortgage. (1 *John. Ch. Rep.* 425. 1 *Id.* 447. 5 *Id.* 235. 9 *Cowen,* 403.)

THE CHANCELLOR. This is an appeal by the defendants from a decree of the vice chancellor of the seventh circuit for the foreclosure of a mortgage. And the only question

is, whether the vice chancellor has correctly applied the principle to the facts of this case, that where the owner of lands subject to a charge sells them at different times in parcels the several parcels are to be charged in the inverse order of their alienation. (*See Aicken* v. *Machlin,* 1 *Drury & Walsh's Rep.* 621. *James* v. *Hubbard,* 1 *Paige's R.* 228.) The land now owned by Seymour was first sold and conveyed, and a few days afterwards the residue of the mortgaged premises was sold to Holley for $800. Holley paid the whole purchase money, directly to the mortgagee, and took a release of his land from the lien of the mortgage. And the question is whether the complainant, by the execution of that release, discharged the lands previously conveyed to Maxwell from the lien of his mortgage ?

This rule of charging the lands in the inverse order of their alienation is a mere rule of equity. The release to a subsequent purchaser, therefore, is not a technical discharge of the lands previously conveyed from the lien of the incumbrance. Neither is it an equitable release or discharge, unless upon the principles of natural equity and justice it ought thus to operate against the party making the release to the subsequent grantee. And as I am satisfied from the evidence that the vice chancellor arrived at the correct conclusion as to the actual cash value of the land conveyed to Holley at the time the mortgagee executed the release to him, I think he has applied the principle of the rule correctly to the facts of this case. For the whole value of the lands which remained unsold after Maxwell purchased having been actually applied to the reduction of the amount due on the mortgage, he was not prejudiced by the sale of those lands to Holley under the stipulation that they should be released from the lien of the mortgage. And it was carelessness that he did not see that his own lot was discharged from the mortgage also, before he paid over the purchase money to Pease ; which purchase money does not appear to have been paid down when the deed to him was given, on the 14th of March, or to have been applied on the mortgage.

Again; it does not appear that the deed to Maxwell was recorded, or that he was in possession of the premises conveyed to him, or that the complainant had any notice that this part of the premises did not still belong to the mortgagor, at the time he received the money and released the premises conveyed to Holley. And without notice of the prior conveyance, either actual or constructive, the mortgagee would not lose his lien by releasing the land of the subsequent purchaser. (*Guion* v. *Knapp*, 6 *Paige's Rep.* 35.)

The decision of the vice chancellor was therefore right, and the decree appealed from must be affirmed with costs.