Reilly *v.* Mayer.

---

PHILIP REILLY *vs.* JOSEPH C. MAYER and others.

Marshalling of assets is a well established head of equity jurisprudence. The general principle is, that if one party has a lien on, or interest in two funds for a debt, and another party has a lien on, or interest in one only of the funds, for another debt, the latter has a right in equity to compel the former to resort to the other fund, in the first instance, for satisfaction, if that course is necessary for the satisfaction of the claims of both parties, whenever it will not trench upon the rights, or operate to the prejudice of the party entitled to the double fund.

But this rule has its qualifications, and is never applied except where it can be done without injustice to the creditor or other party in interest having a title to the double fund, or where it is not injurious to a third person, over whom the party claiming the benefit of the principle has no superior equity. M. executed mortgage on two lots to the Trenton M. L. Association, assigning to them at the same time, as collateral security, five shares of stock. Afterwards M. gave complainant a mortgage on one of these lots, and after the execution of the latter mortgage, he assigned to T. and O. his interest in the five shares of stock.

*Held,* that complainant was entitled to require the T. M. L. Association to sell first the lot which was exclusively embraced in their mortgage.

But that complainant had no equity to compel the appropriation of the stock to the payment of first mortgage.

That while M. owned the stock, there was an equity, as between him and the complainant, that in enforcing the mortgage securities, the stock should be applied to the payment of the mortgage to which the debtor had pledged it, in such a manner as to relieve the complainant's security, but that such latent equity did not follow it into the hands of a *bona fide* purchaser without notice.

---

*E. W. Scudder,* for complainant.

*Barker Gummere,* for defendants.

THE CHANCELLOR. On the 29th of October, 1855, Joseph C. Mayer executed a mortgage on two lots of land in the city of Trenton to the Trenton Mutual Loan Association, to secure a debt of one thousand dollars; and as additional and collateral security for the same debt, he assigned to the association five shares of its stock, of which he was then the owner.

On the 5th of May, 1856, he executed a mortgage to the complainant, on one of the same lots, to secure a debt of nine hundred and seventy-two dollars.

On the 3d of April, 1857, Joseph C. Mayer transferred his interest in the said five shares of stock to Carten Sierck and Henry Offerman.

The complainant now brings his suit on his mortgage, which is a subsequent encumbrance to that of the Trenton Mutual Loan Association. The prayer of his bill is, that the lot of land which is embraced in the mortgage of the association, and not in his mortgage, be *first* sold, and its proceeds applied to the payment of the debt due the association; and that in case of any deficiency after such application of the proceeds, resort may be had to the shares of stock transferred, as additional security to the mortgage, before the other lot, which is common to both mortgages, is resorted to.

That of *marshalling securities,* is a well established and most useful head of equity jurisdiction. "The general principle is, that if one party has a lien on, or interest in two funds for a debt, and another party has a lien on, or interest in one only of the funds for another debt, the latter has a right in equity to compel the former to resort to the other fund, in the first instance, for satisfaction, if that course is necessary for the satisfaction of the claims of both parties, whenever it will not trench upon the rights or operate to the prejudice of the party entitled to the double fund." 1 *Story's Eq. Jur.* § 633. There is no difficulty as to the application of this principle in the present case, as far as the mortgaged premises are con-

cerned, which are not embraced in the complainant's mortgage, but included in the mortgage of the Trenton Mutual Loan Association. Those premises should first be sold. Such a disposition, as to sale, will secure the payment of both mortgage debts, and will violate no rights of the mortgagor. It is admitted that both lots are not sufficient to pay the two mortgages.

The claim which the complainant makes, to have the five shares of stock sold before the association is permitted to resort to the premises common to both mortgages, presents quite a different case for the application of the rule. As far as the mortgagor and the association are concerned, they interpose no objection. The claim is equitable, as far as their rights are involved. All the association wants is their money, and it is immaterial to them which security is first appropriated. It makes no difference to the debtor under the circumstances of this case. But a third party objects. Sierck and Offerman are the owners of the stock by transfer from the common debtor. The equities are between them and the complainant. The question is—what equity has the complainant to take their property for the relief of his security? While the common debtor owned the stock, there was an equity, as between him and the complainant, that in enforcing the mortgage securities, the stock should be applied to the payment of the mortgage to which the debtor had pledged it, in such a manner as to relieve the complainant's security. Does that equity follow it in the hands of a *bona fide* purchaser without notice? The complainant had no *lien* upon the property, either equitable or legal. He had a right merely to invoke the aid of a court of equity to marshal the securities for his relief. This right does not follow the security into the hands of a *bona fide* purchaser without notice. The rule, that has been stated as a general one, has its qualifications, and is never applied except where it can be done without injustice to the creditor, or other party in interest, having a

title to the double fund, or injury of a third person, over whom the party claiming the benefit of the principle has no superior equity. There certainly can be no equity in permitting the complainant to appropriate the property of these innocent persons to relieve his security. They purchased subject only to the mortgage of the association. The contract between the association and the mortgagor was, that the stock should be only *additional* security to the land embraced in the mortgage. The complainant now seeks to change the contract to the prejudice of these third persons. They purchased without notice of his equities, if he had any. They are *innocent* purchasers. There was nothing to put them on inquiry. Notice of the mortgage to the association did not require them to search the record, for the purpose of ascertaining whether there might not possibly exist some equities between that and other mortgages to affect the title to the stock. Besides, the complainant shows no particular equity in this case. This stock was not embraced in the mortgage which was prior to his, nor does he allege that he knew the fact of its being held by the association as collateral security, and relied upon it when he took his mortgage. The stock remained in the hands of its owners subject to their disposition; and a *bona fide* purchaser ought not to be affected by any such latent equity, as the complainant claims to have existed, for his benefit in this case.

In *Averall* v. *Wade, Lloyd & Goold, tem. Sugden* 252, where a person, being seized of several estates, and indebted by judgments, settled one of the estates, for valuable consideration, with a covenant against encumbrances, and subsequently acknowledged other judgments, it was contended, by the subsequent judgment creditors, that as they only affected the unsettled estates on the principle in *Aldrich* v. *Cooper*, 8 *Ves.* 382, as they had only one fund, they had a right to compel the prior judgment creditors, who had two funds—the settled and unsettled estates—

to resort to the settled estate, or, at any rate, that the settled estate ought to contribute to the payment of the prior judgments. Lord Chancellor *Sugden,* however, held that the subsequent judgment creditors had no equity to compel the prior judgment creditors to resort to the settled estate; on the contrary, that the prior judgments should be thrown altogether on the unsettled estates, and that the subsequent judgment creditors had no right to make the settled estate contribute; observing, after a close examination of *Aldrich* v. *Cooper,* that, upon the whole case, you will find Lord *Eldon,* in the application of the principle, " *carefully avoids dealing with the rights of third persons intervening.*" 2 *Lead. Ca. in Eq.* 159.

When a person has a mortgage covering two lots of land, and there is a subsequent mortgage on one of them only, and the first mortgagee, with knowledge of the second mortgage, and that his debt cannot be satisfied out of one of the lots without injury to the second mortgagee, releases that lot from his mortgage, a court of equity will decree, as between the two mortgages, that the release is a discharge *pro tanto* of the other lot. *Stevens* v. *Cooper,* 1 *J. C. R.* 425; *Governeur* v. *Lynch,* 2 *Paige* 300; *Guion* v. *Knapp,* 6 *Paige* 35; *Paxton* v. *Harriot,* 1 *Jones* 312; 2 *Lead. Ca. in Eq.* 192. But in such case the person releasing must have notice that the rights of third persons are impaired by his act. *Cheesborough* v. *Millard,* 1 *J. C. R.* 409; *Patty* v. *Pease,* 8 *Paige* 277; *Stuyvesant* v. *Hone,* 1 *Sandford* 419.

Now, in no case has it ever been held, that the purchaser to whom the release was given could have his purchase affected by any equities which existed between the original parties. If, then, the person executing the release without notice of existing equities is not responsible for the consequences of his act *a fortiori,* will an innocent purchaser not be subject to any penalty or forfeiture, or have his rights affected by any latent equities of the existence of which he was entirely ignorant at the time of his purchase.

I cannot see that, as between the complainant and Sierck and Offerman, there is any principle of equity to justify this court's so marshalling the assets as to secure the payment of the complainant's security at the expense of the *bona fide* purchasers of this stock.

The decree must be drawn so as to sell first the lot exclusive to the association's mortgage, and then the lot common to both mortgages.