R. KENDALL, Respondent, v. AARON B. WOODRUFF et al., Appellants.

A release of a part of mortgaged premises, given with knowledge of a prior conveyance of another part, is not a technical discharge of the part conveyed; nor does it amount to an equitable release or discharge, unless upon the principles of natural equity and justice it ought thus to operate against the mortgagee giving the release.

Plaintiff sold and conveyed to defendant N. eleven lots in the city of New York, and agreed to advance a sum specified for erecting buildings thereon, in installments, as the buildings progressed, N., after the buildings were completed, agreeing to execute and deliver to plaintiff eleven bonds, each secured by a mortgage on one of the lots for its proportionate share of the purchase-money and the advances. Subsequently, and after a portion of the sum agreed upon had been advanced, N. procured a loan of an insurance company upon his bond, secured by a mortgage on all the lots; he paid the money so borrowed to plaintiff and gave to him his bond, secured by a second mortgage upon all the lots, for $11,220, the balance then due plaintiff. N. then sold and conveyed to defendants W., C. & B. one of the lots, subject to its proportion of the two mortgages, of which sale plaintiff had knowledge, and thereafter N. received from plaintiff the balance of the agreed advance, which was used in completing the buildings. N. delivered to plaintiff ten bonds, each for one-eleventh of the amount of the mortgage held by the latter and of the subsequent advance, and each secured by a mortgage on one of the remaining lots; these were applied first to the payment of such

---

* Judge MILLER was absent from court, on account of sickness, from December 5 to December 15, 1881, and took no part in the decision of causes argued during that period.

advance and the balance upon plaintiff's mortgage, who thereupon released the ten lots therefrom. In an action to foreclose said mortgage, defendants W., C. & B. claimed that such release relieved their lot from liability for more than one-eleventh of the mortgage. *Held* untenable.

(Argued October 14, 1881; decided November 22, 1881.)

Appeal from judgment of the General Term of the Superior Court, in the city of New York, entered upon an order made February 2, 1880, which affirmed a judgment in favor of plaintiff, entered upon the decision of the court on trial at Special Term.

This was an action for the foreclosure of a mortgage to the extent of a balance of $1,770, claimed to be still due upon it. The mortgage originally covered eleven lots, but foreclosure is prayed for only against a certain lot owned by the defendants Woodruff, Conklin & Bayer, who are the only litigating defendants.

On the 6th of October, 1877, plaintiff sold and conveyed to defendant Niebuhr said lots, situate in the city of New York, and received from Niebuhr the latter's bond and mortgage on said lots for $29,920, which was the purchase-price. Contemporaneously therewith the said parties entered into a written contract, whereby Niebuhr agreed to erect on said lots eleven houses as therein provided, and to have them completed before May 1, 1878, and whereby Kendall agreed to make advances to the amount of $2,050 on each house, payable in installments, as the work progressed. The contract further provided as follows, viz.:

"For each of the above advances the said Kendall agrees to receive the bond of the said Niebuhr, secured by mortgage upon the lot, provided all the said houses and lots are free from all grants and mortgages, liens, judgments or otherwise, at the time the said payments are due." On the final completion of all said houses the plaintiff agreed to receive the bond and mortgage (containing usual clauses) of said Niebuhr for $5,770 on each house and lot, being $2,720 for the cost of the lot and $3,050 for the advance, and to cancel the first mortgage.

On May 16, 1878, plaintiff had advanced to Niebuhr the first two installments called for by the contract which, with the price of the lots, amounted to $48,620. Niebuhr procured a loan of $44,000 from the New York Life Insurance Company, secured by mortgage upon the lots, which amount he paid to plaintiff, he canceling the purchase-money mortgage. Plaintiff then made to Niebuhr the third advance called for by the contract, amounting to $6,600, which made the balance due plaintiff on that day $11,220. For this amount the mortgage in suit was executed, covering the entire premises, subject to the mortgage held by the New York Life Insurance Company. The mortgage contained this clause: "In case of foreclosure of this mortgage all to be sold in one parcel, or in single lots, at option of said Daniel R. Kendall."

Plaintiff testified that it was further agreed that this mortgage was to be held by him, as security, until he got his final mortgages, namely: eleven second mortgages of $1,770, and that upon the receipt of those it was to be discharged. Niebuhr then went on with the erection of the houses, and the last payment under the contract, amounting to $8,250, was made to him by plaintiff after the 26th of September, 1878. He sold one of the lots to the defendants Woodruff, Conklin & Bayer; he also sold seven more of the lots August 23, 1878, subject to $4,000 of the mortgage held by the New York Life Insurance Company, and the purchaser in each case, as a part of the consideration paid, executed a second mortgage for $1,770, which was turned over to plaintiff. Upon each of the three houses and lots remaining unsold Niebuhr executed and delivered to plaintiff a second mortgage for the same amount. The ten mortgages thus received by plaintiff were, by agreement between him and Niebuhr, applied in repayment of the last advance of $8,250, and the balance applied upon the mortgage of $11,220. Upon the receipt of each of the said ten second mortgages, Kendall released the premises covered by it respectively from the lien of the general mortgage.

The deed to Woodruff, Conklin & Bayer was for a consideration therein expressed of "one dollar (and other good

and valuable considerations);" it conveyed the premises in question subject " to two mortgages on said premises, amounting in the aggregate to the sum of five thousand dollars." By their answer they admit that this sum had reference to $4,000 of the mortgage held by the New York Life Ins. Co., and to the proportionate one-eleventh share of the principal sum of the mortgage of $11,220, and they also admit the option secured to Kendall by the last-mentioned mortgage as to the manner in which, in case of foreclosure, the sale is to be made..

*R. E. Deyo* for appellants. As defendants had no actual or constructive notice of the agreement, or any parol modification of it, they cannot be bound thereby. (*Jackson, ex dem. Merrick,* v. *Post,* 15 Wend. 588 ; *Van Rensselaer* v. *Clark,* 17 id. 25 ; *Jackson* v. *Given,* 8 Johns. 137 ; *Jackson* v. *Van Volkenburgh,* 8 Cow. 260 ; *Jackson* v. *Winslow,* 9 id. 13.) Plaintiff has no security for the last advance, because he was not bound to make it. (*Ackerman* v. *Hunsicker,* 21 Hun, 53 ; *Truscott* v. *King,* 6 N. Y. 147 ; *Hall* v. *Crouse,* 13 Hun, 557 ; Thomas on Mortgages, 62 ; *Ring* v. *Steele,* 3 Keyes, 450 ; S. C., 4 Abb. Ct. App. Dec. 68 ; *Dwight* v. *Newell,* 3 Comst. 185.) The agreement entered into between Kendall & Niebuhr did not amount to an equitable mortgage as against these defendants. (*Ackerman* v. *Hunsicker,* 21 Hun, 53.)

*W. McDermott* for respondent. When a mortgage for $5,770 on each house was executed to plaintiff after they were finished, he was bound to cancel and remove all other mortgages held by him on such house or houses. (*Judson* v. *McMahon,* 79 N. Y. 373 ; *Ackerman* v. *Hunsicker,* 85 id. 43.) Defendants had notice (by record) of the mortgage in suit. This was sufficient to put them on inquiry as to the terms and conditions upon which it was made and held, and having been made under the contract, defendants were bound by the terms of the contract. (*Payne* v. *Wilson,* 74 N. Y. 348 ; *Ackerman* v. *Hunsicker,* 85 id. 43.) The contract between plaintiff

and Niebuhr entitled plaintiff to a mortgage on this house and lot for $1,770. This gave plaintiff an equitable lien for $1,770, which the court will enforce. (*Payne* v. *Wilson*, 74 N. Y. 348.) The contract between plaintiff and Niebuhr is not included in the recording act, and, therefore, the defendants Woodruff, Conklin & Bayer took the conveyance subject to the agreement and contract between plaintiff and Niebuhr. (*Cary* v. *White*, 52 N. Y. 138; *Weaver* v. *Barden*, 49 id. 286.)

FOLGER, CH. J. The facts, as they appear of record in the register's office, are as follows. Kendall conveyed the premises, being eleven lots, to Niebuhr. Niebuhr gave a mortgage to the insurance company for $44,000. He then gave a mortgage to Kendall for $11,220. He then gave a deed to the defendants for one of the eleven lots. When this deed was given to them, they had constructive notice of the two mortgages, and that they were upon the eleven lots, and consequently took the lot conveyed to them with a contingent liability upon it for the payment of the whole of those mortgages. This condition of the matter is somewhat altered as between them and Niebuhr by what took place in fact. For they also had actual notice of these mortgages, and though in the deed to them they are spoken of as amounting to $5,000 in the aggregate, they have admitted in their answer that they knew that that statement referred to the insurance company's mortgage of $44,000, and the plaintiff's mortgage of $11,220; and it is a plain inference that they understood that the lot conveyed to them was to take equally with the other ten lots the burden of the two mortgages. The most that can be claimed for them, from the facts so far stated, is, that as between them and Niebuhr, and as between them and the other grantees of Niebuhr, their lot was equitably liable for but one-eleventh of the whole amount of the principal and interest of those two mortgages. But nothing yet appears to affect Kendall in that way. So far, he appears entitled to collect his whole mortgage from the lot of the defendants, if he fails to get it elsewhere.

There are some facts arising subsequently, on which the defendants rely to free their lot from some of that burden. After the sale to them, Niebuhr sold seven other of the lots, and took mortgages from the purchasers, and assigned them to Kendall. Niebuhr gave mortgages upon other three of the lots to Kendall. Each of these mortgages was for an equal eleventh part of the $11,220 mortgage, and an equal eleventh part of $8,250, moneys advanced by Kendall to Niebuhr, under the building contract cotemporaneous with the deed to Niebuhr. Niebuhr and Kendall applied these mortgages, first to the payment of that advance, and the residue upon the $11,220 mortgage. Kendall released the ten lots from the lien of his mortgage. The defendants urge that thereby he relieved their lot from any liability to him for more than $1,020 of the principal of his mortgage and the accrued interest on that sum. The fact alone of the releases would not have that effect. A mortgagor who has not actual notice of equities among owners of the premises or others, arising subsequent to his mortgage, is not affected by them to his harm. In this case, however, Kendall had notice in fact of the conveyance to the defendants. At first sight, it would seem that doing that act with that knowledge, he had disregarded the equitable rights of the defendants, and should himself bear any consequent loss. But here other facts come in, to raise counter equities, and to put them in the balance against those of the defendants. When Kendall conveyed to Niebuhr, he made a contract cognate in time and subject-matter, by which he agreed to advance moneys to Niebuhr for putting up buildings on all the lots. He made all the advances agreed for, some of them after the deed of Niebuhr to the defendants. He was not obliged so to do by his contract, as one of the conditions in it would have excused. But it was prudential for him to do so, and for the best interests of all concerned. The money advanced went into the houses on the lots; as we infer, some of it into the house on the defendants' lot, as well as into the others. Thus the value of each lot was increased, that of the defendants with the rest. All were better enabled to bear the burden of the two mortgages upon them all alike, and the

likelihood of any one failing to meet its portion of the liens was put further off, if not entirely removed. Here is a consideration for Equity, when it comes to weigh the equities of the defendants and to put other equities in counterpoise with them, as it may do. Suppose that Kendall had refused to carry out his contract with Niebuhr, and for want of the advance of money, the latter had been unable to finish the block of buildings. There would have been embarrassment upon all parties, and, it is not unlikely, greater damage to the defendants than that which they now assert. The advance was made in good faith. The several mortgages were taken from Niebuhr, and the releases given in good faith and to attain a result beneficial to all. It is not always that a release of a part of mortgaged premises, given with knowledge of a prior conveyance of another part that remains unreleased, is held inequitable. It is not a technical discharge of that part; nor is it an equitable release or discharge, unless upon the principles of natural equity and justice it ought thus to operate against the mortgagee giving the release. (*Per* WALWORTH, Ch., *Patty* v. *Pease*, 8 Paige, 277.) As the defendants have directly and indirectly had the benefit of the advance of money made by Kendall, as it was beneficial to all interested to make the advance and to take the mortgages, which he could not do save by releasing, it is not natural equity and justice that the defendants have their lot relieved from a proportionate share of the sum left due on the mortgage after applying enough of the ten several mortgages to the debt for the last advance to satisfy it.

No other reason is put forward in this court for a reversal of the judgment than the releases and their effect.

The judgment should be affirmed.

All concur.

Judgment affirmed.