Constant *et al.* agt. The American Baptist Home Mission Society.

## NEW YORK SUPERIOR COURT.

MARY T. CONSTANT, as executrix, and S. VICTOR CONSTANT and others as executors, &c., of SAMUEL S. CONSTANT, deceased, agt. THE AMERICAN BAPTIST HOME MISSION SOCIETY, impleaded, &c. (three cases).

*Mortgages — Unrecorded mortgages — Who is a subsequent mortgagee in good faith, and for a valuable consideration — When party cannot claim the benefit of the recording act.*

A gave three mortgages to C, through D, the latter's attorney, for moneys loaned, one dated October 2, 1882, and the other two dated February 17, 1883. The attorney, D, handed the bonds to C, and retained the mortgages for record. He caused the first mortgage to be recorded, but the last two were never recorded. On September 13, 1883, A executed a bond and mortgage to the American Baptist Home Mission Society upon the property covered by C's recorded mortgage. On January 11, 1884, he executed mortgages to the same society upon the property covered by C's unrecorded mortgages, which mortgages to the society were recorded Mr. D, the attorney for C, was also an officer of, and counsel for, the society. It was for funds of the society in his hands and chargeable to him for reinvestment that he undertook to turn into the society the bonds and mortgages referred to. A few months thereafter he made an assignment for his creditors:

*Held,* that as against C, the relation between D and the society was that of debtor and creditor, and the taking of the bonds and mortgages for D's antecedent debt did not constitute it a mortgage for a valuable consideration, so as to be entitled to take advantage of the fact that its mortgages were first duly recorded. The claim that C being also an officer of the society should have prevented D from acting as he did, and that his executors were, therefore, estopped from enforcing their mortgages against the society is not tenable, C's rights having accrued before any wrong was perpetrated upon the society.

*Special Term, May,* 1886.

*Thornall, Squires & Constant,* for plaintiffs.

*John E. Parsons,* of counsel.

*Edward S. Clinch,* for defendants.

Constant *et al.* agt. The American Baptist Home Mission Society.

FREEDMAN, *J.* — The three bonds and mortgages upon which the actions were brought were duly executed and acknowledged by Elizabeth Meehen and Hugh Meehen, her husband, to secure the payment of the sums named therein. These sums they received as loans from Mr. Samuel S. Constant through Mr. Deane, who acted as Mr. Constant's attorney and counsel in the transaction. The date of the first bond and mortgage is October 2, 1882, and the other two are dated February 17, 1883. The papers were duly delivered to Mr. Deane, who handed the bonds over to Mr. Constant, and retained the mortgages for record. This, in law, constituted a complete delivery to Mr. Constant, and thereupon Mr. Constant's right to enforce the same became fixed. If he is to be deprived of it, it must be done by reason of something which occurred afterwards. There is no evidence that he ever received payment.

It appears, however, that Deane caused only the first mortgage to be recorded; that the other two were never recorded, and that he had authority to determine whether or not they should be recorded. Although in the matters stated he acted as the attorney and counsel of Mr. Constant, he was, at the same time, extensively engaged in real estate speculations on his own account, from some of which Mr. Constant indirectly received some benefit. Mr. Deane loaned Mr. Constant's money to the Meehens to be used in the erection of buildings, and the mortgages taken were temporary or so-called builders' mortgages, which were intended to be paid off and to be replaced by others of larger amounts, whenever the buildings were so far advanced that a permanent loan could be obtained on them. This accounts for Mr. Deane's failure to record two of the mortgages referred to. But whatever the reason was, no person could take advantage of it as against Mr. Constant, except a subsequent purchaser or mortgagee in good faith, and for a valuable consideration, whose conveyance or mortgage, was first duly recorded.

On or about September 13, 1883, the Meehens executed a bond and mortgage to the American Baptist Home Mission

Society upon the property covered by Mr. Constant's recorded mortgage. On January 11, 1884, they executed mortgages to the same society upon the property covered by Mr. Constant's unrecorded mortgages. The execution of these three mortgages, with the bonds belonging thereto, was procured by Mr. Deane, who sent the bonds to the society at once, and the mortgages as soon as they were recorded.

The main question, therefore, is whether, as against Mr. Constant, the said society is a subsequent mortgagee in good faith and for a valuable consideration, whose mortgage was first duly recorded.

As to Mr. Constant's recorded mortgage, this question must be at once decided in the negative. Some independent considerations of an alleged equitable character which are claimed to affect the enforcement of this mortgage just as much as they are claimed to affect the enforcement of the unrecorded mortgages, I shall hereafter consider.

As to Mr. Constant's unrecorded mortgages, it becomes important to notice the relation which Mr. Deane occupied towards the society. He was a member of the executive board from May, 1878, to May, 1885, a member of the finance committee from June, 1878, to May, 1884, and the counsel of the society from September 13, 1880, to June, 1884. As such counsel it was his duty to examine titles on investments made by the society.

In the regular course of events, therefore, Mr. Deane would have examined the title of the Meehens, and, if found all right, he would have procured the money from the society. He would then have used so much of it as was necessary to pay Mr. Constant and satisfy his mortgages, and paid the residue over to the Meehens. But all which was done was that under date of January 11, 1884, a statement was prepared for Mr. Deane by Mr. Squires, who attended to that kind of business for him, which showed the amount due to Mr. Constant on his unrecorded mortgages, that the Meehens gave a receipt for the amount "as per statement," *i. e.*, for so much money not received

by them, but to be used to satisfy Mr. Constant's mortgages; that satisfaction pieces were prepared, and that thereupon the Meehan bonds and mortgages were sent by Mr. Deane to the society, the bonds at once, and the mortgages when recorded. Nothing was paid to the Meehens, nothing was paid to Mr. Constant and nothing was paid by the society at the time or at any time afterwards. The satisfaction pieces were not executed. Mr. Constant was not even informed of the matter. For months afterwards he kept inquiring of Mr. Deane whether the latter had not yet found anything for the mortgages.

The explanation for all this is that for a long time prior thereto the society had entrusted Mr. Deane with the invest- ment of its funds, and its committees had not exercised that supervision over his acts which should have been exercised, so that Mr. Deane could and did invest the funds of the society pretty much as he pleased. When a mortgage which the society held was paid to Mr. Deane, and this happened quite frequently, he applied to the society for the execution of a satis- faction piece, and the paper was executed by some of the officers of the society and handed to him, together with the bond and mortgage, for delivery to the party entitled thereto, but the amount received by him remained in his hands until he saw fit to reinvest it, and return a bond and mortgage for it. It was for funds thus chargeable to him for reinvestment, and which had been in his hands for some time, that he undertook to turn into the society the bonds and mortgages referred to. He was at the time heavily embarrassed in his real estate specu- lations, and without doubt sent to the society the said bonds and mortgages in order to stave off investigation. A few months thereafter he failed and made an assignment for the benefit of his creditors.

Under these circumstances it is difficult to see how the society can claim the benefit of the recording act. As against Mr. Constant the relation between Mr. Deane and the society was that of debtor and creditor. The taking of the bonds and mortgages for the antecedent debt of Deane did not constitute

Constant *et al.* agt. The American Baptist Home Mission Society.

it a mortgage for a valuable consideration within the meaning of the statute (*R. S.* [6*th ed.*], *vol.* 2, *p.* 1138, *sec.* 1), for it parted with nothing on the faith of the mortgages (*Delaney* agt. *Stearns*, 66 *N. Y.*, 157; *Bank for Savings* agt. *Frank*, 45 *Supr. Ct. R.*, 404). Nor was there any representation made that the mortgages were first mortgages. But the society is not even a mortgagee in good faith, for, under the circumstances of this case, the society as principal must be deemed to have had the same knowledge concerning the rights of Mr. Constant which Mr. Deane possessed as its attorney. Whatever benefit the society might claim under other circumstances under the rule · as laid down by me in *Dillon* agt. *Sixth Ave. R. R. Co.* (48 · *Supr. Ct. R.*, 283; *affirmed* 97 *N. Y.*, 627) cannot be accorded to it by reason of the fact that contemporaneously with the execution of the bonds and mortgages by the Meehens to the · society, and for the purpose of ascertaining the precise amount to be paid or credited to the Meehens upon the basis that the amounts of said bonds and mortgages were to be treated as loans · · from the society, Mr. Deane procured Mr. Squires to make out the statement which showed the amount due to Mr. Constant. Now, it may well be that Mr. Deane personally did not see this · statement until the day after the loan to the Meehens was closed between them and Mr. Squires on paper. But this is immaterial, because Squires acted for Deane, and the whole transaction remained a transaction on paper, the Meehens receiving · nothing, Constant receiving nothing and the society parting with nothing, and because Deane, beyond doubt, had personal knowledge of the whole transaction and of the contents of the · statement before the bonds and mortgages were transmitted to · and received by the society. The information thus obtained by Mr. Deane was, therefore, information acquired by him in the very course of the business of the society and as its attorney. The result is that upon this point the case falls within the rule · as stated in *Bank of the United States* agt. *Davis* (2 *Hill*, 451); *Ingalls* agt. *Morgan* (10 *N. Y.*, 178); *Dillon* agt. *Anderson*, (43 ·

VOL. III. 66

Constant *et al.* agt. The American Baptist Home Mission Society.

*N. Y.*, 231); *The Distilled Spirits* (11 *Wall*, 356); *The Bank for Savings* agt. *Frank* (45 *Supr. Ct. R.*, 404); *Kendall* agt. *Niehbur* (45 *Supr. Ct. R.*, 542); *affirmed* (46 *Supr. Ct. R.*, 544, *and* 87 *N. Y.*, 1). Moreover, at that very time Mr. Deane was not only the attorney of the society, but also a member of its executive board and of its finance committee.

There remain to be noticed the considerations of an equitable character to which I referred in the beginning, and on account of which it is claimed Mr. Constant and his executors are estopped from enforcing their mortgages against the society. They rest on the fact that Mr. Constant, at the times herein-before referred to, was a member of the finance committee of the society and chairman of its executive board, and upon this it is claimed that it was his duty to prevent Mr. Deane from acting as he did. The answer to all this is that Mr. Constant's rights had accrued before any wrong was perpetrated upon the society; and that, even if he had known of the intention of Mr. Deane to give to the society the mortgages which were turned over, and had acted as the society claims he should have acted, the society would not have received the mortgages at all, and Mr. Deane would have remained indebted to the society pre-cisely as he then was. The position of the society would not have been improved in the least by such action, and conse-quently it was not harmed by Mr. Constant's omission to act. Its loss was complete when it released previous mortgages with-out compelling Mr. Deane to pay over the proceeds collected by him. The only risk Constant did run was as to his unrecorded mortgages, and that was the penalty imposed by the recording act in favor of subsequent purchasers or mortgagees in good faith and for a valuable consideration, whose conveyances or mortgages might have been first duly recorded.

An equity is also claimed to arise from the fact that the society foreclosed its mortgages, purchased at the foreclosure sale and made a contract to finish the buildings. There is nothing in this claim. These things were done when Mr. Con-stant was no longer an officer, nor even a member of the society,

and while the society stood, for the reasons hereinbefore stated, chargeable in law with notice of Mr. Constant's rights even if the contracts were not made after the filing of the notices of the pendency of the present actions.

As to the form of the complaints I see no reason to change the views expressed by me on the trial. There is no statute, rule or practice requiring that the complaint for the foreclosure of a mortgage shall contain special allegations as to defendants who are or claim to be subsequent lienors, and there is no difference in method between the foreclosure of an unrecorded and that of a recorded mortgage, except that under rule 63, an unrecorded mortgage must be filed with the clerk before the execution of the sheriff's or referee's deed on a sale under the judgment of foreclosure. As both the plaintiffs and the society claim under mortgages executed by the Meehens, and the mortgages of the plaintiffs are first in date, the controversy does not present a question of paramount title, but only the question whether plaintiffs' mortgages are really what they purport to be, viz., first liens.

The plaintiffs are entitled to the usual judgment of foreclosure and sale, with costs, and an allowance in each of the three actions. Except as to matters peculiar to the actions when separately considered, the findings to be handed up for signature should be as they were proposed by the plaintiffs and corrected by me in action No. 1, with the addition of a further finding, which seems to have been overlooked, showing breach of the condition of the mortgage, viz., non-payment and the amount due.